THOMPSON, APPELLANT, *v.* CHICAGO, BURLINGTON & QUINCY RAILROAD CO. ET AL., RESPONDENTS.

(No. 6,032.)

(Submitted January 4, 1927. Decided January 22, 1927.)

[253 Pac. 313.]

*Quieting Title—Judgment in Eminent Domain—Collateral Attack—Limitations of Actions—Appeal in Equity Cases—Presumptions—Record on Appeal—Striking Documents Improperly Incorporated.*

Appeal from Judgment—Documents not Part of Judgment-roll or not Included in Bill of Exceptions Stricken from Record.
   1.   Papers and documents incorporated in the transcript on appeal from a final judgment which are not properly a part of the judgment-roll and not included in a bill of exceptions duly settled are no part of the record and will be stricken therefrom.

Appeal—Burden of Showing Error on Appellant.
   2.   The burden of showing reversible error is upon appellant, the supreme court entering upon its investigation of a cause on appeal with the presumption that the lower court was correct in its determination.

Same—Equity Cases—When Evidence Presumed Sufficient to Support Findings.
   3.   Where the record on appeal in an equity case does not present the evidence taken in the district court, it will be presumed that there was sufficient to sustain its findings.

Same—Cause Tried by Court—What Appellant must Show to Secure Reversal.
   4.   On appeal from the judgment in an action tried by the court without a jury, in order to obtain a reversal, the appellant has the burden of showing that the record will not sustain the trial court's conclusion upon any admissible theory.

Quieting Title—Eminent Domain—Collateral Attack.
   5.   Where the purpose of an action to quiet title was to set aside a final order or decree made some thirty years prior to the institution of the action in proceedings to condemn the land in question in which plaintiff as defendant had been duly served with process, the action constituted a collateral attack upon that order or judgment.

Judgment—When Proof Against Collateral Attack.
   6.   A judgment of the district court, proceeding within its powers and possessing jurisdiction of the subject matter of the action or

2.   See 2 R. C. L. 132.
6.   See 15 R. C. L. 836.

proceeding and of the parties thereto, cannot be called in question, even if erroneous, by the parties or privies in a collateral action or proceeding.

Eminent Domain—Judgment Awarding More Than Mere Easement not Void but Voidable and not Open to Collateral Attack.

7. Under the rule that a judgment which awards a greater measure of relief than is warranted by the demand of plaintiff or the facts is erroneous and voidable, but may not be impeached in a collateral proceeding, *held* that where the court, as contended by plaintiff in an action to quiet title, in an order of condemnation gave judgment vesting title in fee simple in the condemnor instead of simply granting an easement in the property, its judgment was not void so as to make it subject to collateral attack.

Quieting Title—Limitation of Actions.

8. Under sections 9015 and 9016, Revised Codes of 1921, where it appeared in an action to quiet title that plaintiff had not been seised or in possession of the land in question for a period of ten years prior to the commencement of the action, his right to maintain it was barred.

---

[1]    Appeal and Error, 4 C. J., sec. 1760, p. 141, n. 2; p. 142, n. 9; sec. 2363, p. 554, n. 37; p. 55, n. 38.

[2]    Appeal and Error, 4 C. J., sec. 2662, p. 731, n. 81; p. 732, n. 82, 83, 84, 86, 87.

[3]    Appeal and Error, 4 C. J., sec. 2666, p. 736, n. 34; sec. 2727, p. 777, n. 69.

[4]    Appeal and Error, 4 C. J., sec. 2662, p. 733, n. 87.

[5]    Eminent Domain, 20 C. J., sec. 449, p. 1063, n. 32.

[6]    Eminent Domain, 20 C. J., sec. 449, p. 1064, n. 37.    Judgments, 34 C. J., sec. 815, p. 511, n. 46.

[7]    Eminent Domain, 20 C. J., sec. 449, p. 1064, n. 37.    Judgments, 34 C. J., sec. 864, p. 564, n. 35, 36, 37, 38, 39, 40, 41.

[8]    Limitation of Actions, 37 C. J., sec. 58, p. 742, n. 23.    Quieting Title, 32 Cyc., p. 1355, n. 18.

*Appeal from District Court, Yellowstone County, in the Thirteenth Judicial District; Stanley E. Felt, a Judge of the Sixteenth District, presiding.*

ACTION by H. C. Thompson against the Chicago, Burlington & Quincy Railroad Company and others. Judgment for defendants and plaintiff appeals. Affirmed.

*Mr. Hazen M. Parker,* for Appellant, submitted an original and a reply brief and argued the cause orally.

*Messrs. Wood & Cooke,* for Respondents, submitted a brief; *Mr. Sterling M. Wood* argued the cause orally.

MR. JUSTICE STARK delivered the opinion of the court.

This is an action to quiet title. After setting forth the corporate existence of the various defendants, the complaint alleged plaintiff to be the owner and entitled to the possession of lots 19 and 20 in block 116 of the city of Billings, that the defendants claimed some right, title, interest or estate therein, but that such claims were without any right, and concluded with the usual prayer that defendants be required to set forth the nature of their claims, and that it be adjudged and decreed that they were without right, and that the plaintiff was the owner of the premises involved, *etc.*

The defendants railroad and railway companies filed a joint amended and supplemental answer to the complaint, in which the corporate existence of the defendants was admitted, but which denied that the plaintiff was the owner or entitled to the possession of the premises described in the complaint and admitted that they claimed a right, title, interest and estate therein which was adverse to the plaintiff, and, as separate defenses, set forth: (1) That on or about the first day of September 1894, final order of condemnation was made by the district court in and for the county of Yellowstone, in an action instituted therein by the Big Horn Southern Railroad Company, a corporation duly organized under the laws of this state, as plaintiff, against the plaintiff herein and a large number of other persons and corporations, as defendants. A copy of the final order of condemnation is attached to and made a part of the answer. The property thereby condemned for the use and benefit of said railroad company included that now claimed by plaintiff in this action.

It is further alleged that on or about the first day of December, 1897, the said Big Horn Southern Railroad Company conveyed to the defendant Chicago, Burlington & Quincy Railroad Company all of the property rights, title, interest and estate acquired by it under said final order of condemnation, including the premises described in the complaint herein, by

deed which was thereafter duly recorded in the office of the clerk and recorder of Yellowstone county, that thereafter the Chicago, Burlington & Quincy Railroad Company leased to the defendants Northern Pacific Railway Company and Great Northern Railway Company portions of the lands embraced in the final order of condemnation and described in the plaintiff's complaint, and that these answering defendants are the owners of such lands and the whole thereof, and have been seised and possessed of the same for many years prior to the institution of this action.

(2) That the plaintiff's cause of action was barred by the provisions of section 9015, Revised Codes of 1921, in that neither the plaintiff, his ancestor, predecessor nor grantor, had been seised or possessed of the premises described in the complaint within ten years before the commencement of the action; that the cause of action did not accrue within ten years before the commencement of the suit, and was barred by the provisions of section 9016, *Id.*

(3) That since on or about the year 1894, basing their right thereto under the above-mentioned final order of condemnation, exclusive of other right, they and their grantors and predecessors in interest had continually occupied, claimed and possessed all of the property described in plaintiff's complaint in a notorious, adverse, open, exclusive and continuous manner, and had during such period paid all of the taxes, state, county and municipal, which have been levied and assessed upon said lands and premises, and that the plaintiff's cause of action is barred by the provisions of sections 9019 and 9024, Revised Codes of 1921.

One further separate defense was pleaded, but the conclusion which we have reached makes it unnecessary to consider it.

The defendant Mutual Oil Company filed an answer in which it asserted an interest in a portion of the premises involved, adverse to the plaintiff, by virtue of a lease made to it by the defendant Chicago, Burlington & Quincy Railroad Company, under which it was in possession, and also pleaded as separate

defenses substantially the same matters set out in the answers above referred to.

The order of final condemnation, referred to in the answers of the defendants, recited that the cause was regularly heard on the first day of September, 1894, that none of the defendants appeared, and thereupon the court found: "That each and all of the said defendants have been duly and regularly summoned to appear and answer unto the said plaintiff's complaint herein, and that each and every of the said defendants have failed, after such legal and regular service, to appear and answer or otherwise plead to the plaintiff's complaint, and that the said defendants have each made default in that behalf, and that the default of each and every of said defendants for not appearing and answering or otherwise pleading to the said complaint of the plaintiff has been duly and regularly entered herein, according to the law and the course and practice in this court."

Among other things, this final order further recites that commissioners had theretofore been appointed to determine the amount to be paid by the plaintiff to each defendant as compensation by reason of the appropriation of the lands; that these commissioners duly qualified, and on the twenty-first day of April, 1894, filed their report that due notice had been given to each of the defendants of such filing; that the time for appealing from the awards or other matters contained in said report had expired, and that no appeal had been taken by any of the defendants; that the plaintiff in said proceeding had paid into court the full amount of all damages and compensation allowed to the several defendants, and that all of the proceedings therein were regular and all of the allegations of plaintiff's complaint were true and correct; that the plaintiff was entitled to the relief prayed for; and that the use to which plaintiff sought to apply said property was a public use.

The affirmative allegations of each of these answers were put in issue by the plaintiff's reply thereto. The case was tried in

the district court without a jury, and the court subsequently made its findings of fact and conclusions of law to the effect that, prior to the eighth day of January, 1894, the plaintiff was the owner and entitled to the possession of the lots described in the complaint; that on said 8th of January, 1894, the Big Horn Southern Railroad Company filed its complaint in the office of the clerk of the district court of Yellowstone county to condemn and acquire, for the use of its railroad right of way, the plaintiff's said lots; that summons was duly issued on said complaint and was served upon the plaintiff on the tenth day of February, 1894; that the plaintiff did not appear in said action in any manner and did not take any appeal from the award of damages made to him by the commissioners appointed in that proceeding; that thereafter, on or about the first day of September, 1894, a decree of condemnation was duly given and made by said court, which decree approved and confirmed the awards of the commissioners appointed therein, and conveyed and confirmed to the said Big Horn Southern Railroad Company, its successors and assigns, the lands of the plaintiff for the purposes of its said railroad; that the defendant Chicago, Burlington & Quincy Railroad Company and the Mutual Oil Company are the successors and assigns of all the rights, titles and interests acquired by the said Big Horn Southern Railroad Company, and are in possession of the lands mentioned in the plaintiff's complaint acquired by it in said condemnation proceedings; that the said defendants and their predecessors were, and had been, in the actual possession of said lands for more than ten years prior to the institution of this action, and had erected valuable improvements thereon long prior to the institution of this action, and without any knowledge of any claim of right asserted by the plaintiff to said lands inconsistent with their rights; and as a conclusion of law held that the plaintiff should take nothing by the action and that the defendants have judgment against the plaintiff for

their costs. Judgment was entered in accordance with the foregoing findings of fact and conclusion of law and the plaintiff has appealed therefrom.

In the transcript on appeal filed in this court on September 4, 1925, the appellant incorporated as a part thereof, on pages 52 to 78, inclusive, the summons, with affidavits of service, and other affidavits and documents in the condemnation suit referred to in the answers, and also a motion for judgment on the pleadings in the instant case, which was served and filed on July 1, 1925, and appears to have been overruled by the court. On September 7, 1925, the respondents filed a motion to strike the above matters from the transcript, on the ground that the same had been improperly inserted therein. When this motion was presented to this court, an order was made that it would be considered when the case was argued and submitted on the merits.

Section 9402, Revised Codes of 1921, provides that the record [1] on appeal from a final judgment shall consist of the judgment-roll as defined in section 9409, together with all bills of exceptions filed in the case, and a copy of the notice of appeal. Under the provisions of 9409, as amended by Chapter 146 of the Session Laws of the Nineteenth Legislative Assembly (1925), where, as in this case, the defendants have appeared in the action, the judgment-roll consists of the pleadings, a copy of the verdict of the jury or findings of the court or referee, all bills of exceptions taken and filed, all orders, matters and proceedings deemed excepted to without bill of exceptions, and copy of any order made on demurrer or relating to a change of parties and a copy of the judgment.

Section 9390 makes provision for the settlement of a bill of exceptions, where a party appealing from a final judgment desires to present on appeal the proceedings had at the trial.

Since none of the papers embraced in the transcript from pages 52 to 78, inclusive, constitute any part or portion of the

judgment-roll, and no bill of exceptions embracing the same was ever presented, settled or filed, these papers and documents were improperly included in the transcript on appeal. They cannot be considered by this court, and the respondents' motion to strike the same from the transcript is sustained. This leaves before us for consideration on this appeal only the judgment-roll.

Appellant's specifications of error 1, 2, 3, and 4 are predicated upon matters embraced within the portion of the transcript eliminated therefrom by the above order, and therefore cannot be considered.

While some doubt is raised as to the sufficiency of the remaining specifications of error, we are inclined to treat them as being sufficient to present appellant's claim that there is no basis for the judgment of the lower court in the pleadings or findings.

In the consideration of an appeal, this court enters upon its
**[2–4]** investigation with a presumption that the lower court was correct in its determination, and therefore the appellant has the burden of showing reversible error. (*Stabler* v. *Porter*, 72 Mont. 62, 232 Pac. 187; *State ex rel. Woare* v. *Board of Commrs.*, 70 Mont. 252, 225 Pac. 389; *Haley* v. *McDermott*, 45 Mont. 217, 121 Pac. 1060.) It is also the rule that, when the record on appeal in an equity case does not present the evidence taken in the court below, it will be presumed that there was sufficient to sustain the findings of the court (*Gow* v. *Cascade etc. Co.*, 66 Mont. 488, 213 Pac. 1092), and that, on an appeal from the judgment in an action tried before the court, in order to obtain a reversal, the appellant has the burden of showing that the record will not sustain the conclusion of the court upon any admissible theory. (*State ex rel. Urton* v. *American Bank & Trust Co.*, 75 Mont. 369, 243 Pac. 1093.)

An inspection of the pleadings in this case discloses that the
**[5–6]** real purpose of the plaintiff, and the only theory upon

which he could obtain the relief which he sought, was to set aside the judgment or final order theretofore entered in the condemnation proceedings. It should not require any authorities to establish that such an attempt, in an action to quiet title, constitutes a collateral attack upon that order or judgment, but, if authority for the statement were necessary, it may be found in *Burke* v. *Interstate Savings & Loan Assn.*, 25 Mont. 315, 87 Am. St. Rep. 416, 64 Pac. 879, where the question was directly passed upon, and also in the subsequent case of *Price* v. *Skylstead*, 69 Mont. 453, 222 Pac. 1059.

The district court of Yellowstone county, wherein the condemnation proceedings were instituted and tried in 1894 and the final judgment or order of condemnation was entered, was a court of general jurisdiction. It had power to hear and determine all matters in such proceedings. (Secs. 597 to 615, inclusive, First Division, Code of Civil Procedure, Compiled Statutes of 1887, as amended on pages 266 *et seq.*, Session Laws 1891.)

The judgment or final order of condemnation shows that plaintiff in this action, as a defendant in that action, was duly served with process therein, so that the court had jurisdiction both of the plaintiff and the subject matter of that action. Therefore the judgment or order entered therein cannot be impeached by a collateral attack. In 1 Freeman on Judgments, fifth edition, page 603, paragraph 305, the author states the rule as follows: "This rule of inhibition against collateral attempts to avoid a judgment may be expressed in the following manner: Judgments of a legally organized judicial tribunal, proceeding within the scope of its allotted powers and possessing the requisite jurisdiction over the subject matter of the suit and the parties thereto, whether correct or erroneous, cannot be called into question by the parties or privies in any collateral action or proceeding." (See, also, *Hansen* v. *Goodrich,* 56 Mont. 140, 181 Pac. 739.)

Appellant asserts that the final order of condemnation is void [7] on its face, because it attempts to vest the Big Horn Southern Railroad Company, the predecessor in interest of these defendants, with title in fee simple to the lands condemned, whereas under the statute it was only competent for the court to grant to the condemnor an easement upon the same. Even if it should be conceded that the language of the order is open to the construction placed upon it by appellant— and upon this point we express no opinion—this would not render the order a nullity and make it subject to a collateral attack. The rule governing such a situation is correctly laid down in 34 C. J. 465, section 864, as follows: "If the relief awarded or recovery authorized by a judgment is excessive, either as being greater than the amount demanded, greater than the facts or the evidence would justify, or as improperly including interest, costs, or counsel fees, or as allowing excessive interest or costs, it is erroneous and voidable, but may not be impeached in a collateral proceeding." (See *Johnson* v. *Iron Belt Min. Co.*, 78 Wis. 159, 47 N. W. 363.)

It appearing that the plaintiff would not in any event be entitled to relief in this action without setting aside the judgment or order of final condemnation, and that such judgment or order cannot be attacked in this proceeding, it follows that they cannot, for this reason, prevail on this appeal.

There is a further reason why the judgment appealed from [8] must stand. The court, having expressly determined the validity of the proceedings by which the plaintiff's lands were condemned by the Big Horn Southern Railroad Company, that the defendants Chicago, Burlington & Quincy Railroad Company and Mutual Oil Company are the successors and assigns of all the rights acquired by that company, and as such were and had been in possession of the lands for more than ten years prior to the commencement of this action, the conclusion is inevitable that the plaintiff had not been seised or possessed of

the lots involved within a period of ten years before the commencement of the action, and that the right to maintain the same is barred by the provisions of sections 9015 and 9016, Revised Codes of 1921.

This conclusion renders it unnecessary to consider any of the other matters discussed in the briefs of counsel..

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN and MATTHEWS concur.

MR. JUSTICE MYERS did not hear the argument and takes no part in the foregoing decision.